## BANKERS TRUST COMPANY, Plaintiff,

v.

## OLD REPUBLIC INSURANCE COMPANY, a Pennsylvania corporation, and Chicago Underwriting Group, Inc., a Delaware corporation, and Employers Insurance of Wausau, a Mutual Company, a Wisconsin corporation, and Lee Keeling & Associates, an Oklahoma corporation, Defendants.

## EMPLOYERS INSURANCE OF WAUSAU, a Mutual Company, Cross-plaintiff,

v.

## LEE KEELING & ASSOCIATES, INC., an Oklahoma corporation, Cross-defendant.

No. 87 C 7853.

United States District Court, N.D. Illinois, E.D.

Oct. 25, 1988.

Gerald G. Saltarelli, Robert N. Hermes, Butler Rubin Newcomer Saltarelli & Boyd, Chicago Ill., White & Case, New York City, for plaintiff.

Richard A. Devine, Bruce R. Meckler, Michael M. Marick, Phelan Pope & John, Chicago Ill., for Old Republic Ins. Co.

Robert J. Lepri, Trizna & Lepri, Chicago Ill., Richard T. Sonberg, Tulsa Okla., for Lee Keeling & Associates, Inc.

Michael E. Dowd, Brian A. Frankl, Dowd & Dowd, Chicago Ill., for defendant and cross-plaintiff Employers Insurance of Wausau.

## MEMORANDUM AND ORDER

MORAN, District Judge.

The dispute in this case concerns a potential insurance claim under two separate professional liability policies. Plaintiff Bankers Trust Company ("Bankers") seeks a declaratory judgment that one of two insurance companies—Old Republic (with its management company, Chicago Underwriting Group) or Employers Insurance of Wausau ("Wausau")—will be liable on excess liability policies issued to Lee Keeling & Associates ("LKA"), a firm of consulting petroleum engineers. Bankers alleges that between 1981 and 1984 LKA negligently appraised certain oil. and gas reserves of Scandrill, Inc. Bankers claims to have relied on these appraisals in extending over $100 million in loans. Scandrill defaulted on those loans in 1984 and Bankers thereafter brought suit against LKA—now in the discovery stages in the United States District Court for the District of Oklahoma—claiming damages in excess of $30 million (hereinafter "the Oklahoma litigation").

The first $2 million in liability is covered by a primary insurer who has admitted coverage and is not a party to this action. At issue is LKA's coverage for liability in excess of that amount. Wausau issued an excess liability insurance policy for $3 million to LKA covering 1983. In November 1984 Old Republic issued a similar policy to LKA covering 1985. In November 1985 Old Republic brought suit against LKA in this United States District Court before Judge Hart for rescission of its insurance policy, alleging that LKA was aware of Bankers' claim when it applied for insurance with Old Republic, but failed to disclose this fact. *Old Republic Insurance company, et al., v. Lee Keeling & Associates, Inc.*, No. 86 C 6950 (hereinafter the "Old Republic litigation"). Bankers was not a party to that litigation but, instead, on September 10, 1987, it filed this action to determine excess liability coverage for

damages arising from the Oklahoma litigation. While a motion to consolidate the two actions was pending before Judge Hart, Old Republic and LKA on November 24, 1987, entered into a settlement agreement which declared the policy null and void, and placed $425,000 in an escrow account for the benefit of LKA in connection with the Oklahoma litigation. The settlement mooted the motion to consolidate.

Bankers then amended its complaint, seeking to set aside the settlement agreement between LKA and Old Republic as a fraudulent conveyance (count I). It also seeks a declaration that Old Republic is obligated to indemnify LKA with respect to the claims asserted in the Oklahoma litigation and that the settlement agreement has no effect on the rights of Bankers (count II). Bankers also asserts that in the event the Old Republic policy is rescinded, Wausau is liable on its policy (count III). Wausau cross-claims against LKA, seeking a declaratory judgment that it is free from liability on its policy. Old Republic now moves to dismiss count I pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, for failure to allege fraud with particularity, and to dismiss count II (or in the alternative for summary judgment on that count) on grounds of collateral estoppel. Defendant LKA has moved to dismiss the amended complaint and Wausau's cross-claim for lack of personal jurisdiction. We deny all motions.

*Failure to Allege Fraud With Particularity*

■ Rule 9(b) requires parties averring fraud to plead with particularity the circumstances constituting such fraud. This requirement imposes a somewhat greater pleading burden on plaintiffs than does the normal notice provisions in Fed.R.Civ.P. 8. The purpose of Rule 9(b) is twofold: it is intended to (1) supply the defendant "with sufficient information with which to frame a responsive pleading," *Alco Financial Services v. Treasure Island Motor Inn*, 82 F.R.D. 735, 737 (N.D.Ill.1979), and (2) "safeguard potential defendants from lightly made claims charging commission of acts that involve some degree of moral

turpitude." 5 Wright and Miller, *Federal Practice and Procedure* Civil Section 1296. The requisite degree of specificity depends on the circumstances of each case. *Darling & Co. v. Klouman,* 87 F.R.D. 756, 758 (N.D.Ill.1980). Rule 9(b) is not a rigid rule and it is satisfied if the amended complaint reasonably notifies the defendants of their roles in the alleged scheme. *Morgan v. Kobrin Securities,* 649 F.Supp. 1023, 1028 (N.D.Ill.1986).

■ Count I contains sufficient allegations to satisfy the requirements of Rule 9(b). Plaintiff alleges that it anticipates an award of damages in the Oklahoma litigation in excess of $10 million and that LKA would look to its policy with Old Republic to satisfy that judgment (am. cplt. ¶ 19). LKA will not have sufficient assets to meet this liability without Old Republic's insurance coverage (*id.* ¶ 20). Plaintiff alleges that the settlement in the Old Republic litigation was without adequate and sufficient consideration and that the purpose of the agreement "was to frustrate, delay, hinder or defraud Bankers as a creditor of LKA" (*id.* ¶¶ 22, 23). The amended complaint identifies the parties to the allegedly fraudulent transaction and their purpose for entering into it.

Old Republic states here the bases of its suit against LKA before Judge Hart and argues that the settlement reached was in good faith. These issues, however, go to the merits of plaintiff's claim to set aside the settlement agreement and do not concern Rule 9(b) pleading requirements. Count I satisfies those requirements by identifying the transaction and by alleging the requisite intent. We leave the merits of plaintiff's charge for another day.

*Preclusive Effect of the Old Republic Litigation Settlement*

■ Old Republic moves to dismiss count II for failure to state a claim upon which relief may be granted, but we treat its motion as one for summary judgment pursuant to Rule 56 because it refers to matters outside the pleadings. The pending motion focuses on the preclusive effect of an earlier diversity action between an insurer and its insured on the rights of an injured party. Old Republic claims that Bankers was not a necessary party to its lawsuit against LKA, that the final judgment in that suit binds Bankers as to issues litigation and that because Bankers failed to intervene there it is precluded from challenging the settlement approved by Judge Hart. We reject these contentions and agree with Bankers that since it was not a party to the prior proceedings it is not bound by the settlement agreement.

The doctrine of collateral estoppel "is central to the purposes for which civil courts have been established, the conclusive resolution of disputes within their jurisdiction." *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). Issues that are actually and necessarily determined by a court of competent jurisdiction are conclusive in subsequent suits involving a party to the prior litigation. *Id.* Under traditional collateral estoppel rules a party to the successive litigation is not bound by a prior judgment unless he or she was a party to the prior litigation or was in privity with one who was. *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); *Lee v. City of Peoria,* 685 F.2d 196, 199 (7th Cir.1982); *Smith v. Bishop,* 20 Ill.2d 434, 187 N.E.2d 217, 219 (1962). However, Judge Aspen recently noted there has been "a loosening of the traditional and sometimes artificial limitations on the application of res judicata and collateral estoppel." *Diaz v. City of Chicago,* 601 F.Supp. 1251, 1253 (N.D.Ill.1984) (citations omitted). All parties agree that Bankers was not a party to the Old Republic litigation, nor was it in privity with a party thereto. The question presented here is whether Bankers is bound by the settlement agreement because it knew about the litigation, participated in the production of evidence, and did not intervene in the lawsuit.

Although the parties neglect the issue, we must first discuss whether the governing law is state or federal. It is generally recognized that if the prior judgment was rendered in state court, then state law would apply; that if the prior action concerned a federal question and was in feder-

al court, then federal collateral estoppel principles would govern. This case, however, involves the preclusive effect of a prior judgment in federal court sitting in diversity on a subsequent federal diversity action. Whether federal or state law applies in this situation has never been satisfactorily addressed by the Seventh Circuit,[1] although it has received extensive discussion elsewhere. *See* 18 Wright, Miller & Cooper, *Federal Practice & Procedure: Jurisdiction* Section 4472, p. 735 *et seq.* (concluding that federal law usually applies); Annotation *State or Federal Law as Governing Applicability of Doctrine of Res Judicata or Collateral Estoppel in Federal Court Action,* 19 A.L.R.Fed. 709 (1974) (noting cases where state law was applied, but not distinguishing when prior lawsuit was in state court). *See also* Degnan, *Federalized Res Judicata,* 85 Yale L.J. 741 (1976) (arguing in favor of federal courts applying federal law); Vestal, *Res Judiciata/Preclusion by Judgment: the Law Applied in Federal Courts* 66 Michigan Law Review 1723 (1968) (same). Some courts have held that state substantive law governs the application of the doctrines of collateral estoppel and *res judicata,* mainly out of concerns elicited in *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). *E.g., Answering Service, Inc. v. Egan,* 728 F.2d 1500 (D.C.Cir. 1984); *Semler v. Psychiatric Institute of Washington, D.C., Inc.,* 575 F.2d 922 (D.C. Cir.1978). *See also Costantini v. Trans World Airlines,* 681 F.2d 1199, 1201 (9th Cir.) (noting that courts in the Ninth Circuit have applied state collateral estoppel rules even where the prior action was in federal court on federal question jurisdiction), *cert. denied,* 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 932 (1982). Most federal courts in other jurisdictions, however, reason that because these doctrines are meant to protect civil judgments, and most often do not concern substantive state law principles, federal courts should apply federal law when determining the preclusive effect of prior federal court rulings. *See, e.g., Petromanagement Corp. v. Acme–Thomas Joint Venture,* 835 F.2d 1329, 1333 (10th Cir.1988) (collecting cases); *Precision Air Parts, Inc. v. Avco Corp.,* 736 F.2d 1499, 1503 (11th Cir.1984); *Hunt v. Liberty Lobby,* 707 F.2d 1493 (D.C.Cir.1983);[2] *Aerojet–General Corp. v. Askew,* 511 F.2d 710 (5th Cir.), *appeal dismissed,* 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975); *Kern v. Hettinger,* 303 F.2d 333 (2d Cir.1962).

Although we are inclined to agree that federal law should apply, absent special circumstances, we need not resolve this issue since we conclude that there is no conflict between federal and Illinois collateral estoppel principles (termed "estoppel by verdict" in Illinois courts) respecting the rule of law applicable here. Both jurisdictions recognize that "a person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interest as to be his virtual representative." *Aerojet–General, supra,* 511 F.2d at 719. To be a virtual representative courts require an identity of interests and some measure of control or direction over the prior proceedings. *See, e.g., Montana v. United States, supra; Johnson v. Nationwide Business Forms, Inc.,* 103 Ill.App.3d 631, 431 N.E.2d 1096, 59 Ill.Dec. 339 (1st Dist.1981).

The requirement of control goes to the litigant's right to have at least one full and

1. *See Gasbarra v. Park–Ohio Industries, Inc.,* 655 F.2d 119 (7th Cir.1981); *Morgan v. Inter–Continental Trading Corp.,* 360 F.2d 853 (7th Cir. 1966) (both citing Illinois state court decisions but not discussing choice-of-law issues). In *Teamsters Local 282 Pension Trust Fund v. Angelos,* 762 F.2d 522, 523 (7th Cir.1985), the court stated in blanket terms that "federal courts apply federal principles of preclusion." That case, however, involved a prior judgment rendered in federal court on a federal question.

2. It is unclear what rule is applied in the D.C. Circuit. The broad language in *Hunt* follows the reasoning in other jurisdictions to conclude that federal *res judicata* law applies, but this holding was expressly limited by the court in *Answering Service, supra,* in order to reconcile the circuit's rule in *Semler, supra.* Based on the reasoning in *Hunt,* however, we do not believe these decisions can be reconciled. The situation in *Answering Service* may well have warranted the application of state *res judicata* law since the relevant state rule there *required* the splitting of actions—in contrast to the federal rule that prohibited it.

fair opportunity to argue its case before the court. In *Pinto Trucking Service v. Motor Dispatch, Inc.*, 485 F.Supp. 484, 489 (N.D.Ill.1980), this court addressed the issue of collateral estoppel in the context of two defendants in an earlier trial who had been dismissed on directed verdict before they had the opportunity to present their evidence and argue their claims. Although their participation was thus limited, we held that they had a substantial interest in the outcome of the first trial and the extent of their participation was sufficient to bind them to the verdict. The Seventh Circuit reversed, 649 F.2d 530 (7th Cir.1981), ruling that we erred

> in concluding that appellants, with no opportunity to present evidence or argue their perspective to the jury, had participated in the first trial "in a significant way" and thus could be collaterally estopped from litigating the issues decided against the [remaining] defendants.

*Id.* at 533.

Bankers' participation in the Old Republic litigation did not rise to the level required for the application of collateral estoppel principles. Nothing in the record indicates that Bankers shared interest with the parties to the Old Republic litigation. While counsel for Old Republic alleges that attorneys for Bankers produced evidence, monitored depositions and inquired into the settlement proceedings, there is no suggestion that Bankers controlled or even influenced the proceedings. Indeed, it would appear that Bankers desired independent participation in the settlement negotiations with Old Republic and was denied the opportunity to do so (aff. of Michael Marick, exh. A to Old Republic's mo. to dismiss, ¶¶ 7(c), 12). The Old Republic litigation did not reach trial and Bankers did not approve of the settlement. *Cf. National Bank of Albany Park in Chicago v. Newberg*, 7 Ill.App.3d 858, 868, 289 N.E.2d 197, 204

(1st Dist.1972) (participation in defense and approval of final order waives non-parties' rights to challenge the judgment).

Old Republic maintains that even though Bankers was absent from the earlier litigation, it is bound by the settlement reached in that suit because it failed to intervene. Old Republic's claim here is one of waiver. Most of the cases cited by Old Republic on this point, however, involve factual circumstances that we believe make those decisions inapposite. For example, *Cummins Diesel Michigan, Inc. v. The Falcon*, 305 F.2d 721 (7th Cir.1962) and *Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel*, 459 F.Supp. 507 (S.D.Fla.1978), *aff'd*, 621 F.2d 1340 (5th Cir.1980), *aff'd in part and rev'd in part*, 458 U.S. 670, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982), involved *in rem* actions to determine interests in maritime vessels—a type of action intended to resolve all ownership disputes. In these circumstances the law places an obligation on plaintiffs with adverse claims to intervene. *Penn–Central Merger & W. Inclusion Cases*, 389 U.S. 486, 88 S.Ct. 602, 19 L.Ed.2d 723 (1968), was also a special case. It concerned challenges in several courts to an Interstate Commerce Commission's approval of a merger. When a court in Pennsylvania stayed proceedings in deference to a New York court deciding the same issue, the parties to the Pennsylvania action were held to be bound by the New York action, even though they failed to intervene. As we already noted, *Aerojet–General* involved the virtual representative doctrine, which is not shown to be appropriate here. Finally, *Diaz v. City of Chicago, supra*, involved a leader of a civil rights organization which had lost in an earlier suit on the same facts and legal claims. There the plaintiff directed the prior litigation and, after losing, attempted to revive the lawsuit in his own name.[3]

---

3. Another opinion (not cited by the parties) discussed the application of collateral estoppel where, as a matter of litigation strategy, a plaintiff decided to forego the opportunity to intervene in an earlier action in order to bring a later suit. The district court in *Lynch v. Merrell–National Laboratories*, 646 F.Supp. 856, 861

(D.Mass.1986), held that the failure of a plaintiff to intervene in a mass consolidated product liability trial warranted the application of collateral estoppel rules. This decision was reversed by the Court of Appeals, 830 F.2d 1190, 1193 (1st Cir.1987) (applying both federal and state collateral estoppel rules), because the plaintiffs

One Michigan case, *Wilcox v. Sealey,* 132 Mich.App. 38, 346 N.W.2d 889 (Mich.Ct. App.1984), held that an injured party's failure to intervene in a lawsuit between the insurer and the insured, relating to her insurance claim, operated as a waiver of her right to deny the binding effect of the declaratory judgment. The circumstances differ, however, from those here. Bankers did not seek to intervene but it did bring this action and then sought to consolidate it with the Old Republic litigation. It sought to be a party of that litigation. It is difficult to discern a waiver from its decision to seek that result by consolidation rather than intervention. The Michigan ruling is, moreover, inconsistent with Illinois law. The declaratory judgment sought in the Old Republic litigation may well have been an appropriate means to determine Old Republic's responsibility under its policy with LKA. *See* 1B Moore's Federal Practice ¶ 0.411[6], p. 449, n. 19 (1983). However, Illinois courts have held that injured persons are necessary parties to such actions. *See, e.g., M.F.A. Mutual Insurance Co. v. Cheek,* 66 Ill.2d 492, 495, 363 N.E.2d 809, 811, 6 Ill.Dec. 862, 864 (1977) (default judgment in action by insurer against insured does not bar subsequent action by injured party against insured); *Williams v. Madison County Mutual Automobile Ins. Co.,* 40 Ill.2d 404, 407, 240 N.E.2d 602, 604 (1968).[4] A judgment arising from a suit between the insured and the insurer does not bind the injured person who was not a party to that lawsuit. *Williams,* 40 Ill.2d at 407, 240 N.E.2d at 604 ("the declaratory judgments ... would not under typical circumstances have been binding on the plaintiffs-claimants here since without all necessary parties the judgment would not be conclusive and *res judicata* "); *Sobina v. Busby,* 62 Ill.App.2d 1, 9, 210 N.E.2d 769, 773 (1st Dist.1965) (Illinois agrees with rule

that "injured plaintiff in the underlying tort action has an interest which cannot be cut off by an action to which he is not a party").

We hold that Bankers has not waived its right to challenge the settlement reached in the Old Republic litigation. Conduct sufficient to establish waiver necessarily includes a deliberate effort to avoid participation in the prior action. For example, in *Williams, supra,* the suit between the insurer and the insured did name the injured parties as defendants, who later moved on their own accord for dismissal from the lawsuit. On these facts the Illinois Supreme Court found that plaintiffs were precluded from questioning the binding effect of the judgment. 40 Ill.2d at 407, 240 N.E.2d at 604. Here Bankers' conduct does not provide a basis for finding waiver. Old Republic did not name Bankers in its lawsuit before Judge Hart and Bankers did not act to avoid that litigation. In fact, Bankers filed its own lawsuit here, naming all the necessary parties, and sought consolidation. Under these facts the failure to intervene does not estop Bankers from challenging the settlement. Of course, even though Bankers is not bound by the judgment in the Old Republic litigation, Old Republic will be provided the opportunity to prove in this court that the policy between it and LKA is void because of LKA's failure to apprise it of Bankers' potential $30 million claim.

### LKA's Motions to Dismiss

LKA moves to dismiss both Bankers' amended complaint and Wausau's cross-complaint. Rule 9(b)'s requirement that averments of fraud be stated with particularlity is one ground LKA urges for dismissing count I of the amended complaint. That motion is denied for the same reasons that we denied Old Republic's Rule 9(b)

---

were deprived of a fair and full opportunity to litigate.

4. Old Republic claims that this rule is limited to personal injury claims. We disagree. While many of the cases employing this rule involved personal injury claims, Old Republic cites no cases which so limit its application. We believe the necessary party rule captures the general insurance principle that "as a beneficiary of a

liability insurance policy, an injured person has rights under the policy which vest at the time of the occurrence giving rise to his injuries." *Reagor v. Travelers Ins. Co.,* 92 Ill.App.3d 99, 103, 415 N.E.2d 512, 514, 47 Ill.Dec. 507, 509 (1st Dist.1980). This principle of insurance liability law is not limited by the type of underlying insurance claim.

motion. The other ground for LKA's motion, as to both the amended complaint and the cross-complaint, is lack of personal jurisdiction. LKA claims that it has no office in Illinois, services few customers here (none with any connection to this litigation) and has not voluntarily transacted business in this state to bring it within Illinois' long-arm jurisdiction statute.

■ LKA raised and lost this personal jurisdiction issue in the Old Republic litigation before Judge Hart. *See Old Republic v. LKA,* No. 86 C 6950, slip op. (February 11, 1987). That court found jurisdiction proper because LKA, through its agent, solicited Old Republic's insurance policy in Illinois (slip. op. at 4). LKA maintains that this ruling is not *res judicata* with respect to its claim here since the case was voluntarily dismissed pursuant to the settlement agreement. Even if it is correct on this issue, we are in agreement with Judge Hart's reasoning and find LKA's solicitation of Old Republic's insurance policy—a central aspect of Bankers' case here—to be sufficient contact with Illinois to satisfy both due process requirements and Illinois' long-arm statute, Ill.Rev.Stat. ch. 110, § 2–209. Further, although LKA resisted Judge Hart's ruling that personal jurisdiction is proper in Illinois, LKA thereafter, in Illinois, entered into settlement negotiations with Old Republic and agreed to limit Old Republic's liability on the excess professional liability policy. This agreement itself provides the basis for Bankers' amended complaint, and on these facts we independently hold that we have *in personam* jurisdiction over LKA with respect to the amended complaint.

Cross-plaintiff Wausau sues for a declaration that it is not liable on its insurance policy with LKA, and LKA does not deny that this court has ancillary jurisdiction over Wausau's claim. Its motion to dismiss the cross-complaint adopts its earlier lack of personal jurisdiction argument. Since this court has personal jurisdiction over LKA on Bankers' amended complaint, we need not decide whether there are independent grounds for personal jurisdiction with respect to the cross-complaint. LKA's

presence in this state as defendant to the amended complaint provides this court with personal jurisdiction.

## CONCLUSION

For the reasons stated, we conclude that Banker's amended complaint satisfies Rule 9(b) requirements, Old Republic is not entitled to summary judgment on grounds of collateral estoppel or waiver, and this court has personal jurisdiction over LKA. We therefore deny all pending motions.